| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | | As read into the record March 15, 2018 |
| ------------------------------------------------------x | : | |
| In re: | : | Chapter 7 |
| | : | |
| Nikolas Gianopolous, | : | Case No. 10-14817-JLG |
| | : | |
| Debtor. | : | |
| | : | |
| ------------------------------------------------------x | | |

## BENCH DECISION RESOLVING DEBTOR'S MOTION PURSUANT TO SECTION 350(b) TO REOPEN CASE

**A P P E A R A N C E S:**

NIKOLAS GIANOPOULOS
By:  Stuart P. Gelberg, Esq.
     600 Old Country Rd., Ste.410
     Garden City, NY 11530

ROUND TABLE PARTNERS 1 LP
By:  Andrew Schriever, Esq.
     Cuddy & Feder LLP
     500 5th Ave #1400
     New York, NY 10110

Introduction

Nikolaus Gianopoulos ("**Niko**"), the debtor in this closed no asset chapter 7 bankruptcy case, received his discharge in bankruptcy by order of this Court (Peck, J.)[1] dated February 9, 2011 (the "**Discharge Order**"). Round Table 1 LLC ("**Round Table**") was among the general unsecured creditors whose debts Niko scheduled in his case. Its scheduled indebtedness is related to a Loan (as defined below) that Round Table made to entities affiliated with members of Niko's extended family. Niko executed a Loan guaranty (the "**Guaranty**") on behalf of himself and on behalf of his brother Constantine ("**Gus**") Gianopoulos, as Gus's attorney-in-fact, pursuant to a general power of attorney. Round Table received notice of Niko's bankruptcy case and the deadlines applicable therein. It did not object to Niko's bankruptcy discharge, or to the dischargeablity of its scheduled claim.

The Loan is in default. In 2014, Round Table sued Gus in New York State Supreme Court, New York County (the "**State Court**") to enforce the Guaranty. In that litigation, which is pending, Gus denies that he is liable under the Guaranty, and maintains that he did not authorize Niko to execute it on his behalf. Round Table contends that it would not have made the Loan without Gus's guaranty, and that if what Gus says in that litigation is true, then Niko fraudulently induced Round Table to make the Loan. In 2016, Round Table sued Niko in State Court (the **"State Court Action"**) to recover approximately $3.5 million in damages caused by Niko's alleged fraud. Niko denies liability and also asserts that his indebtedness to Round Table – including that arising from the alleged fraud – was discharged in his chapter 7 case. He made that and other arguments in the State Court in support of his unsuccessful motion to dismiss the complaint in the State Court Action. Niko is appealing that ruling.

---

[1]   Upon Judge Peck's retirement from the bench, this case was reassigned to Judge Garrity.

- 1 -

The matter before the Court is Niko's motion (the "**Motion**") pursuant to section 350(b) of the Bankruptcy Code, 11 U.S.C. § 350(b), for an order reopening his chapter 7 case, so that he can obtain an order of this Court staying Round Table from prosecuting the State Court Action and sanctioning Round Table and its counsel for violating the Discharge Order.[2] Round Table opposes the Motion.[3]

For the reasons set forth below, the Motion is DENIED.

Jurisdiction

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2102 (Preska, C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

Facts[4]

On or about November 30, 2007, Round Table made loans aggregating $3,487,000 (collectively, the "**Loan**") to three limited liability companies owned or controlled by members of the Gianopoulos family (the "**Borrowers**"). The Loan is evidenced by an agreement dated November 13, 2007 (the "**Loan Agreement**") and four promissory notes (the "**Promissory Notes**"). Niko executed the Guaranty both on his own account and on behalf of Gus, as Gus'

---

[2] Niko submitted the following documents in support of the Motion: (i) Notice of Motion Pursuant to 11 U.S.C. section 350(b) To Reopen Case To Sanction Round Table Partners 1 LP And Their Attorneys Cuddy & Feder LLP For Violating The Debtor's Discharge & Affirmation of Stuart P. Gelberg In Support [ECF No. 28] ("**Gelberg Aff**."); and (ii) Reply Affirmation In Further Support of Motion to Reopen Case, To Sanction Round Table Partners 1 LP and Their Attorneys Cuddy & Feder LLP For Violating The Debtor's Discharge [ECF No. 34] (the "**Gelberg Reply Aff.**").

[3] Round Table submitted the following documents in opposition to the Motion: (i) Memorandum of Law In Opposition to Debtor's Motion Pursuant to 11 U.S.C. Section 350(b) To Reopen Case and For Sanctions [ECF No. 33]; and (ii) Declaration of Andrew Schriever In Opposition to Debtor's Motion Pursuant to 11 U.S.C. Section 350(b) To Reopen Case and for Sanctions [ECF No. 33] ("**Schriever Decl**.").

[4] Except as otherwise indicated, the facts are not in dispute.

- 2 -

attorney-in-fact. *See* Guaranty (R31-65).[5]  As support for the Guaranty, Niko submitted an affidavit to Round Table dated November 7, 2007 (the "**Niko Affidavit**"), in which he represented that pursuant to a Durable General Power of Attorney dated April 12, 2006 (the "**Power of Attorney**"), a copy of which he provided to Round Table, Gus designated Niko as his attorney-in-fact, and that the Power of Attorney had not been revoked or repudiated, and was still in full force and effect.  *See* Affidavit That Power of Attorney Is In Full Force (R29), ¶¶ 1, 2;[6] *see also* Power of Attorney (R25-27).  In doing so, Niko confirmed the following representation and warranty contained in the Guaranty:

> Niko, as attorney in fact for Gus pursuant to the certain power of attorney dated April 12, 2006, has all requisite power and authority to execute the Loan Documents and this Guaranty on behalf of Gus.

Guaranty, ¶ (C)(3)(d)(iv).  Finally, in the Niko Affidavit, Niko stated, as follows:

> I make this affidavit for the purpose of inducing [Round Table] to make the loan set forth in that certain Loan Agreement dated as of November 13, 2007 to accept delivery of the following Instrument(s), as executed by me in my capacity as the ATTORNEY-IN-FACT, with full knowledge that this affidavit will be relied upon in accepting the execution and delivery of the Instrument(s) and in paying good and valuable consideration therefor.

---

[5]  Round Table's counsel submitted most of the documents discussed and cited herein in support of Round Table's opposition to the Motion.  *See* Schriever Decl, Exs. 1-9.  Exhibit 1 to that declaration contains a copy of the record of certain of the proceedings in the State Court Acton discussed herein, including copies of pleadings filed therein by Niko and Round Table, and transcripts of State Court hearings.  Citations to the documents annexed in Exhibit 1 will be to "[Document] R _-_."  When necessary, the citation will include references to pages, sections or paragraphs in the particular document.

[6]  In that affidavit, Niko represented, as follows:

> 1.  [Gus] did, in writing, appoint me as [his] true and lawful ATTORNEY-IN-FACT in the within Power of Attorney.
>
> 2.  I have no actual knowledge or actual notice of revocation or termination of the Power of Attorney by death or otherwise, or knowledge of any facts indicating the same.  I further represent that [Gus] is alive, has not revoked or repudiated the Power of Attorney and the Power of Attorney still is in full force and effect.

Niko Affidavit ¶¶ 1, 2.

- 3 -

Niko Affidavit, ¶ 3. The Instruments referenced in the affidavit were the Loan Agreement and Promissory Notes underlying the Guaranty.

On September 13, 2010, Niko filed his voluntary chapter 7 petition herein. In amended Schedule F to his petition, Niko listed Round Table as a creditor holding an unsecured debt (the "**Round Table Debt**") that arose in 2007 on account of a "Personal/Business Loan" in an "unknown" amount. [ECF No. 16]. Judge Peck fixed December 6, 2010 (the "**Objection Deadline**") as the last day of the period (the "**Objection Period**") in which creditors could file objections to Niko's bankruptcy discharge, and for filing complaints objecting to the dischargeability of debts of the sort designated in 11 U.S.C. § 523(c). [ECF No. 7]. The Clerk of this Court provided all scheduled creditors, including Round Table, with notice of Niko's bankruptcy and the Objection Deadline. On January 31, 2011, the chapter 7 trustee in Niko's case filed a no-asset report of distribution. Neither Round Table nor any other party in interest objected to Niko's discharge in bankruptcy or to the dischargeability of any particular debt. On February 9, 2011, Judge Peck entered the Discharge Order and final decree [ECF No. 25], and thereafter, closed Niko's no asset chapter 7 case.

The Borrowers defaulted under the Loan Agreement. In 2014, Round Table filed multiple actions against Gus in the State Court seeking to enforce the Guaranty. In support of his motions to dismiss those actions, Gus submitted substantially identical affidavits in which he denied any knowledge of the Guaranty, and asserted that he did not "ever give [his] consent to anyone to sign the . . . Guaranty on [his] behalf." *See, e.g.*, Affidavit of Constantine Gianopoulos, sworn to July 21, 2014 (R76 - 84), ¶ 6. Moreover, after noting that "[his] signature does not appear anywhere on the . . . Guaranty," he contended that "Round Table has not

provided any evidence whatsoever to show that [he] authorized [Niko] . . . to sign the . . . Guaranty on [his] behalf." *Id*. at ¶ 7. That litigation is pending in the State Court.

On July 13, 2016, nearly two years after learning that Gus denied that Niko was authorized to execute the Guaranty on his behalf, Round Table commenced the State Court Action against Niko. *See* Complaint, dated July 13, 2016 (R158 - 168) (the "**Complaint**") ¶ 1. The gravamen of the Complaint is that if what Gus says in his affidavits is true, "then Niko fraudulently swore to and signed false instruments in order to induce Round Table to loan almost $3.5 million without any plan or intention for Round Table to be paid back." *Id.* at ¶ 4; *see also id*. at ¶ 22 ("[I]f Niko lied, as his brother's sworn testimony indicates, then Niko committed fraud to induce Round Table to loan millions of dollars that neither brother had any intention of paying."). Thus, Round Table contends that it is suing Niko "to obtain redress from [him] if it is determined that, as his brother's testimony suggests, Niko lied under oath to fraudulently procure the loan which neither he, nor his brother had an intention of paying." *Id.* at ¶ 5; *see also id.* at ¶ 1 (asserting that "[t]his action seeks damages resulting from [Niko's] fraudulent actions, as alleged by his own brother [Gus], in inducing Plaintiff Round Table to make certain loans in the aggregate principal amount of $3,487,000 . . . which neither . . . Niko nor . . . Gus who guaranteed the debt apparently ever intended on repaying."). Although Round Table acknowledges that Niko has filed for personal bankruptcy and obtained a discharge of his obligations, it nonetheless alleges that the "bankruptcy did not discharge Niko from fraud under applicable bankruptcy law, nor specifically from the fraud claim that arises in this case, as the fraud could not have been and was not discovered (or discoverable) until July 21, 2014 when Gus first swore under oath that no one had authority to bind him to the Guaranty (long after Niko's bankruptcy proceeding was concluded), thereby calling into question for the first time

- 5 -

Niko's authority to sign the Guaranty on Gus'[] behalf, as well as the Niko Affidavit where Niko swore under oath that he had full power to bind Gus in connection with the Round Table Loan." *Id.* at ¶ 34; *see also id.* at ¶ 47 (alleging that "Niko's fraud could not have been discovered in the exercise of reasonable diligence, as such fraud did not come to light until Gus testified against Niko's interest by swearing that Gus did not give consent to be bound the Guaranty.").

Niko did not answer or otherwise respond to the Complaint. Accordingly, on September 9, 2016, Round Table moved for the entry of an Order and Judgment pursuant to Rule 3215 of the New York Civil Practice Law and Rules (the "**CPLR**") directing entry of a default judgment against Niko for all the relief requested by Round Table in the Complaint. *See* Notice of Motion for Default Judgment (R1-139). In response thereto, Niko filed (i) a cross-motion to vacate the default, and (ii) a motion to dismiss the Complaint (the "**Motion to Dismiss**") (R140-244). Round Table opposed both motions. The State Court vacated the default, but denied the Motion to Dismiss. Only the latter is germane to the matter before the Court.

Niko sought to dismiss the Complaint pursuant to CPLR 3211(a)(2), (5) and (7), on the grounds that the State Court lacked subject matter jurisdiction over the State Court Action, the action was barred by the Discharge Order, and the Complaint failed to state a claim for relief against him, respectively. Niko argued that by application of §§ 523(a)(2) and 523(c) of the Bankruptcy Code, fraud claims like the one asserted in the State Court Action, are discharged in a bankruptcy case, unless the bankruptcy court (and only the bankruptcy court) determines otherwise pursuant to a timely filed objection (here, prior to the Objection Deadline) to the dischargeability of that claim. He contended that since there is not dispute that Round Table had notice of the Objection Deadline, and that it did not object to the dischargeability of the Round Table Debt, it follows that the Round Table Debt (including any liability based on fraud) was

- 6 -

discharged pursuant to the Discharge Order. Moreover, he asserted that, in any event, the State Court lacked subject matter jurisdiction to determine whether that debt was procured by fraud, because the bankruptcy court has the exclusive jurisdiction to make that determination. In opposing Niko's motion, Round Table contended that under state law, it has two claims against Niko associated with the Guaranty. One is a contract claim to enforce the Guaranty (the "**Contract Claim**"). The other is the fraud claim (the "**Fraud Claim**") which is based upon Niko's alleged misrepresentations "outside the four corners of the loan documents," that allegedly induced Round Table to make the Loan. In focusing on whether the Fraud Claim had been discharged in Niko's chapter 7 case, Round Table contended that the Discharge Order did not extend to that claim because, as alleged in the Complaint, Round Table was unaware of the Fraud Claim, and could not have discovered it until 2014. Round Table maintained that to find otherwise, would deny it its rights to due process. Round Table also contended that because the Fraud Claim was not impacted by the bankruptcy case, the State Court had jurisdiction to adjudicate the merits of that claim. On June 8, 2017, the State Court heard argument on the Motion to Dismiss. *See* Transcript of June 8, 2017 hearing (R427-464) ("**Transcript**"). At the close of the argument, and by order of that date (the "**June 8 Order**"), the State Court denied Niko's motion to dismiss the State Court Action, and directed Niko to answer the Complaint. *See* June 8 Order (R424).[7] On July 14, 2017, Niko filed a notice of appeal of the State Court

---

[7] As relevant, the June 8 Order states, as follows:

> After oral argument and for the reasons stated on the record[,] the motion to dismiss for lack of subject matter jurisdiction is denied. The remainder of the motion to dismiss is denied.
>
> [Defendant] to file and serve an answer within 30 days . . .

June 8 Order. In issuing that order, and in part, the State Court stated, as follows:

> With regard to the motion to dismiss . . . I do think that there is a distinction between Niko acting on his own behalf, a guarantee that he did list in his bankruptcy proceeding, and Niko acted on

Order in the Supreme Court, Appellate Division, First Judicial Department. *See* Notice of Appeal, Schriever Decl., Ex. 9. The appeal is pending.

On July 7, 2017, Niko filed his answer to the Complaint. *See* Schriever Decl. Ex. 5. In the answer, he denies that he defrauded Round Table (*id.* at ¶¶ 27, 36) and asserts, as a Second Affirmative Defense, that the claim being sued on has been discharged in bankruptcy. *Id.* at ¶¶ 38 – 45.

Discussion

Bankruptcy Rule 5010 provides that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." Fed. R. Bankr. P. 5010. In turn, § 350(b) states that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U. S. C. § 350(b). The Bankruptcy Code does not define "cause" under this section. *State Bank of India v. Chalasani (In re Chalasani),* 92 F.3d 1300, 1308 (2d Cir. 2005). Niko denies that he defrauded Round Table. Gelberg Aff. ¶ 19. Moreover, he asserts that even assuming, *arguendo*, that he committed the fraud, as alleged, and that Round Table could not have discovered it until 2014, Round Table knowingly violated the Discharge Order by commencing the State Court Action without first asking this Court to determine whether the Fraud Claim was discharged under §§

---

behalf of another. So, in essence, he was two people: One of them, a good actor, one of them, a bad actor. . . . And so, under all these circumstances and the way the complaint is phrased, if the Court were to take as true that Niko knew at the time that he wore the hat as having the power of attorney, that he did not have the power of attorney, that he gave this assurance that the power of attorney was in effect and permitted him to do what he was doing on behalf of Gus, that that would be stating a fraud claim, and that is not protected under [section 523(a).] . . . . So, under those circumstances, I am going to allow the action to continue, give you an opportunity to file an answer to the complaint. And, clearly, the issue to be decided is whether or not Niko knew that he did not have the authority to enter into the guarantee on behalf of Gus. And because that is a central issue, it must be joined with the action as against Gus . . .

Transcript. at 32:16 – 33:17.

523(a)(2), (4) or (6) of the Bankruptcy Code. *Id.* He maintains that Round Table's continued prosecution of the State Court Action is in violation of the Discharge Order and constitutes "other cause" under § 350(b) to reopen his case, and that this Court can "accord relief to the [D]ebtor," by awarding sanctions against Round Table and in favor of the Debtor, and enjoining the continued prosecution of the State Court Action. *Id.* ¶¶ 10-11. Before considering the merits of the Motion, the Court will consider the application of § 523(a) in this case.

Pursuant to § 727(b) of the Bankruptcy Code, a debtor is discharged from all of its debts that arose prior to the order for relief, "except as provided in § 523." 11 U.S.C. § 727(b). In turn, § 523 states that that the discharge under § 727 "does not discharge an individual debtor from any debt [described in §§ 523(a)(1) – (19)]." *Id.* at § 523(a). Sections 523(a)(2), (4) and (6) encompass scheduled claims arising out of: (i) actual fraud, false pretenses or false representations (§523(a)(2)); (ii) fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny (§523(a)(4)); and (iii) willful or malicious injury to person or property (§523(a)(6)). Unlike the other debts enumerated in § 523(a), these so-called "intentional tort debts," if properly scheduled under § 521(l) of the Bankruptcy Code, are automatically discharged in an individual debtor's case, unless the creditor files a complaint in the bankruptcy court to determine the dischargeability of those claims within the 60-day time period set forth in Bankruptcy Rule 4007. *S*ee 11 U.S.C. § 523(c)(1);[8] Fed. R. Bankr.P. 4007(c); s*ee also Massa v.*

---

[8]  Section 523(c)(1) states, as follows:

> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

11 U.S.C. § 523(c)(1). Bankruptcy Rule 4007 states, in relevant part, as follows:

*Addona (In re Massa)*, 187 F.3d 292, 295-96 (2d Cir. 1999) ("A debt that is scheduled pursuant to §521(l) and Federal Rules of Bankruptcy Procedure 1007(a) and (b)(1) is discharged unless the debt is excepted from discharge under one of the exceptions set forth in § 523(a)."). Pursuant to § 523(c)(1), the bankruptcy court has exclusive jurisdiction to determine the dischargeability of the intentional tort debts. *See Rey v. Laureda (In re Rey),* 05 CV 3535, 2006 WL 1420349, at * 1 (E.D.N.Y May 22, 2006) ("[S]tate courts are without jurisdiction to decide whether a pre-petition debt was procured by fraud, false pretenses, or willful injury under § 523(a)(2), (4), or (6), and therefore not discharged."); *Casey v. Mohamed*, 323 B.R. 834, 836 (S.D.N.Y. 2005) (noting that "[w]hether a claim is excepted from discharge under Section 523(a)(6) . . . is a matter solely within the jurisdiction of the Bankruptcy Court") (citations omitted). Accordingly, the "cumulative effect" of those provisions is to confer upon the debtor "'peace of mind' that if complaints asserting nondischargeability on Section 523(a)(2), (4) [or] (6) . . . have not been filed [in the bankruptcy court] by a date certain . . . they cannot be filed at all and the respective claims will be discharged." *In re Bachman*, 296 B.R. 596, 599 (Bankr. D. Conn. 2003); s*ee also Resolution Trust Corp. v. McKendry (In re McKendry)*, 40 F.3d 331, 336 (10th Cir 1994) ("If claims of nondischargeability under §523(c) are not brought within the sixty-day period, the debts are discharged."); *In re Candidus*, 327 B.R. 112, 116 (Bankr. E.D.N.Y. 2005) ("What is so special about the intentional tort debts is that they will be automatically discharged, unless the

---

(c) Time for Filing Complaint Under § 523(c) in a Chapter 7 Liquidation, Chapter 11 Reorganization, Chapter 12 Family Farmer's Debt Adjustment Case, or Chapter 13 Individual's Debt Adjustment Case; Notice of Time Fixed. . . . [A] complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

Fed. R. Bankr. P. 4007(c).

- 10 -

creditor files a complaint in the bankruptcy court to determine their dischargeabilty within a strict time limit of 60 days for the date first set for the meeting of creditors.") (citation omitted).

Section 523(a)(3)(B) states a limited exception in the application of §§ 523(a)(2), (4) and (6). In substance, it provides that if the debtor fails to schedule a debt in time for the creditor to seek a determination of dischargeability under §§ 523(a)(2), (4) or (6), and the debt is of the kind specified in any of those sections, the debt is nondischargeable. *See* 11 U.S.C. § 523(a)(3)(B);[9] s*ee also In re Bachman*, 296 B.R. at 599 ("If the debtor fails to schedule a creditor before the Bar Date, the debtor does not get the full measure of 'peace of mind.'"); *In re Candidus*, 327 B.R. at 117 (Section "523(a)(3)(B) protects the right of an unscheduled creditor to obtain a determination of nondischargeability of intentional tort debts, and helps vouchsafe the public policy that debts discharged in a Chapter 7 case are only debts honestly incurred."). The consequences to a debtor that fails to schedule debts that fall within the scope of § 523(a)(3)(B) are two-fold. First, in challenging the dischargeability of the claim, the affected creditor is not subject to the time limitations set forth in § 523(c). Thus, a complaint to bar dischargeability may be considered timely even if filed after the deadline set by Rule 4007(c). *See In re Candelaria,* 121 B.R. 140, 145 (Bankr. E.D.N.Y. 1990) (noting that "when paragraph (2), (4) or

---

[9] Section 523(a)(3)(B) states, in relevant part, that a discharge under section 727 of the Bankruptcy Code does not discharge an individual debtor from any debt --

(3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is *not* of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

(6) issues 'are presented in a § 523(a)(3)(B) context, they are not subject to the restrictions of § 523(c) or, therefore, Rule 4007.'") (quoting *Lochrie v. Lochrie (In re Lochrie)*, 78 B.R. 257, 259 (9th Cir. B.A.P. 1987)); *Media House Productions, Inc. v. Amari (In re Amari)*, 483 B.R. 836, 843-44 (Bankr. N.D. Ill. 2012) ("The penalty to debtor for failure to schedule such debts is not nondischargeability but instead it is loss of the 60-day limitation period that applies under Fed. R. Bankr. P. 4007."); s*ee also* Fed. R. Bankr. P. 4007(b) ("A complaint [to determine the dischargeability of any debt] other than under section 523(c) may be filed at any time."). Second, the bankruptcy court does not have exclusive jurisdiction to determine whether the underlying indebtedness is excepted from discharge under §§ 523(a)(2), (4) or (6). Rather, the bankruptcy court and any appropriate non-bankruptcy court have concurrent jurisdiction to make such a determination. *See, e.g., Casey v. Mohamed*, 323 B.R. at 836-37 ("This Court has concurrent jurisdiction [with the bankruptcy court] to determine whether [the creditor's] claim survives [the debtor's] bankruptcy discharge under Section 523(a)(3)(B).") (citations omitted); *In re Candidus*, 327 B.R. at 119 ("The bankruptcy courts and state courts have concurrent jurisdiction [under § 523(a)(3)(B)] to determine the dischargeability of unscheduled debts.") (collecting cases).

Round Table does not deny that the Contract Claim was discharged by the Discharge Order, and Niko does not challenge Round Table's assertion that the Fraud Claim is distinct from the Contract Claim.[10] Round Table contends that the Fraud Claim is excepted from discharge

---

[10] In appropriate circumstances, misrepresentations outside the four corners of a loan document can give rise to a cause of action for fraud that is independent of any remedy under the loan document. *See TIAA Global Invs. LLC v. One Astoria Sq. LLC*, 127 A.D. 3d 75, 87, 7 N.Y.S.3d 1 [1st Dept 2015] ("Where allegations of intentional fraud, though parallel in many respects to the breach of contract claim, include claims of fraudulent misrepresentations made by defendants which induced them to enter into the contract and close on the property, they are not merely redundant of the breach of contract claim . . . [and a] fraud cause of action is sustainable") (internal quotations omitted); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc*, 87 A.D. 3d 287, 294, 928 N.Y.S.2d 229 [1st Dept 2011] (holding that plaintiff stated a fraud cause of action independent of from its breach of contract claim where the complaint alleged "misrepresentations of present facts, and not future intent, made with the intent to induce

under § 523(a)(3)(B) because that claim was neither listed nor scheduled under § 521(l) of the Bankruptcy Code, the debt underlying that claim is of a kind specified in §§ 523(a)(2), (4) or (6) of the Bankruptcy Code, and Round Table did not learn of the claim within the Objection Period and could not have done so.  It contends that to bar its resort to § 523(a)(3) in these circumstance would deny it due process under the Fifth Amendment of the Constitution.

Niko maintains that because Round Table is asserting that it did not have "notice" of the Fraud Claim, to obtain relief under § 523(a)(3)(B), it must prove both that it did not have notice of the claim, and that it could not have discovered that claim within the Objection Period. Gelberg Reply Aff. ¶ 19; *see also id.* at ¶ 16 (Round Table "fails to provide any evidence as to why it could not have detected the alleged fraud.").  To that extent, he is correct because it is settled that "[a] creditor invoking section 523(a)(3) must . . . plead and prove both that its debt was not listed in time to timely file a complaint and that its debt comes within paragraphs (2), (4) or (6) of section 523(a)." *In re Malandra*, 206 B.R. 667, 672 (Bankr. E.D.N.Y. 1990) (citation omitted); s*ee also In re Thompson*, 177 B.R. 443, 446 (Bankr. E.D.N.Y. 1995) ("If a debtor fails to schedule a fraud class claim in time to permit the filing of a timely dischargeability complaint, this improperly disables the creditor.  Accordingly, section 523(a)(3)(B) bars the discharge of any fraud class debt not scheduled in time to permit the creditor to file a timely dishcareability complaint.").  Niko says that Round Table will not be able to meet that burden, and that its right to due process in the chapter 7 case was not compromised, because he scheduled the Round Table Debt, the Clerk of Court provided Round Table with actual notice of Niko's bankruptcy case, and Round Table was in possession of the Niko Affidavit and the original Power of

---

[plaintiff]" to enter into certain agreements); *First Bank of Americas v. Motor Car Funding, Inc,* 257 A.D.2d 287, 292, 690 N.Y.S.2d 17 [1st Dept 1999] (reinstating fraud cause of action on the basis that it was not duplicative of breach of contract claim where it alleged that it "was induced to enter into a transaction because a defendant misrepresented material facts.").

Attorney. From that, he says that Round Table "was on inquiry notice as to any alleged fraud claim and therefore was required to take affirmative steps to identify and schedule the debt." Gelberg Reply Aff. ¶ 25; *see also id*. at ¶ 27 ("[Round Table] and Niko had a prior relationship and in fact by virtue of it having the original power of attorney on file was on inquiry notice of the alleged fraud claim.").

Under *Mullane v. Central Hanover Bank & Trust Co.,* due process is satisfied by "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950). There is no question that Round Table received notice of Niko's chapter 7 case. The parties dispute whether Niko's scheduling of the Round Table Debt, without specifying the Fraud Claim, violated Round Table's right to due process, and thereby effectively precluded it from timely filing a complaint under § 523(a)(2), (4) and/or (6). *See, e.g., Acevedo v. Van Dorn Plastic Mach. Co.,* 68 B.R. 495, 499 (Bankr. E.D.N.Y. 1986) ("A creditor who is notified of the bankruptcy but not of his claim is in the same position as a creditor who has notice of his claim, but not of the bankruptcy."). A factor that might be important in determining whether that notice was adequate for due process purposes is whether, at the time Niko scheduled the Round Table Claim, Gus was denying liability under the Guaranty, and if so, whether Niko was aware of it. *Compare Bowen v. Residential Financial Corp. (In re Bowen)*, 89 B.R. 800, 806-07 (Bankr. D. Minn. 1988) (fraud claim not scheduled by debtor is discharged under chapter 11 plan, where "the record [was] devoid of any evidence of fraudulent concealment [of that claim] by [debtor] that may support a grant to [creditor] of relief from [debtor's] Chapter 11 discharge for its fraud claims . . ."),[11] *with DPWN Holdings (USA), Inc. v. United Air Lines, Inc*., 871 F.Supp. 2d 143,

---

[11] The *Bowen* court noted the type of evidence that the creditor would have to adduce to demonstrate that its right to due process was violated, as follows:

- 14 -

159 (S.D.N.Y. 2012) (creditor adequately plead that price fixing damage claim was excepted from debtor's chapter 11 plan discharge where creditor was not aware of the events giving rise to the claim and debtor, although aware of the potential liability, failed give notice to its creditors; "where a debtor is aware of certain claims against it due to information uniquely within its purview, due process requires that it notify claimants of the character of those claims prior to any discharge. If such notice is not provided, then the claim cannot have been discharged, unless the claimant could have discovered the existence of the claim through the exercise of reasonable diligence prior to the discharge.") (footnote omitted). Of course, those issues are central to the State Court litigation involving both Gus and Niko.

Although the reopening of a case is generally a "ministerial act," *see In re Menk,* 241 B.R. 896, 913 (9th Cir. BAP 1999), courts deny § 350(b) motions where it would be a wasted exercise to grant them. Thus, if "the underlying claim is certain to fail upon a reopening of the proceedings, a bankruptcy court may properly deny the motion." *In re Kassover,* 448 B.R. 625, 631 (S.D.N.Y. 2011). Niko wants to reopen the case to obtain an order of this Court barring Round Table from continuing to prosecute the State Court Action and to sanction Round Table for commencing that action without first coming to this Court for a determination of whether the Fraud Claim is excepted from discharge under §§ 523(a)(2), (4) or (6). However, if Round Table is correct that § 523(a)(3)(B) is applicable herein, Niko is not entitled to such relief because Round Table was not required to seek relief in this Court before commencing that action. That is

---

> To support a request for such extraordinary relief, it was incumbent on [the creditor] to produce some evidence (ideally in the form of an admission by [the debtor], or the statement of another witness with actual knowledge) that [the debtor] knew of the basis for [the creditor's] claims before confirmation of his plan, and before [the creditor] uncovered that basis; that he then concealed them from [the creditor] and its assignee; and that he deliberately failed to specify the claims in his bankruptcy schedules.

800 B.R. at 806.

certainly a basis for denying the Motion. *Cf. In re Chalasani,* 92 F.3d at 1307 ("[I]f the decision not to reopen was bottomed on a finding that the default judgment could not be set aside, such is a permissible basis to deny relief, because reopening in that event would be meaningless."). It is settled that state courts have "the power, subject to statutory exception, to determine the effect of a [bankruptcy] discharge." *State v. Wilkes*, 41 N.Y.2d 655, 657, 394 N.Y.S.2d 849, 363 N.E.2d 555 (1977) (citation omitted). The State Court acquired jurisdiction over the issue of whether the Fraud Claim was discharged in Niko's chapter 7 case, when Niko asserted the discharge in challenging that court's subject matter jurisdiction to adjudicate the Fraud Claim, and thereafter pleaded it as an affirmative defense in his answer to the Complaint. *See In re Palumbo*, 556 B.R. 546, 551 (Bankr. N.D.N.Y. 2016). That court has concurrent jurisdiction to determine the dischargeability of the Fraud Claim under § 523(a)(3)(B), and the Court sees no reason why the State Court Action should not proceed in that court. Indeed, given that court's familiarity with Niko's case, the fact that the appeal of the State Court's denial of the Motion to Dismiss is pending, and at least the possibility that Gus and Niko's actions could be consolidated, that court may be in a better positon than this Court to adjudicate those issues.

Conclusion

Based upon the foregoing, the Court finds that the Debtor has not established grounds for reopening his chapter 7 case. Accordingly, the Motion is DENIED. The parties are directed to submit an order consistent with the foregoing.

Dated: March 15, 2018
New York, New York

/s/ *James L. Garrity, Jr.*
HONORABLE JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE